UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MICHAEL SHERIDAN,

    Plaintiff,

v.                                        CIVIL ACTION NO. 5:23-cv-00238

EASTERN ACCOUNT SYSTEM
OF CONNECTICUT, INC.,
EQUIFAX INFORMATION SERVICES, LLC, and
TRANS UNION, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

On July 19, 2023, the Clerk entered an Entry of Default as to Eastern Account System of Connecticut, Inc. ("Eastern Account") pursuant to *Federal Rule of Civil Procedure* 55(a). On January 5, 2024, the Court held a hearing on damages and directed counsel for Plaintiff Michael Sheridan to file a Post Hearing Brief on Damages [ECF 38]. The matter is ready for adjudication.

**I.**

On March 28, 2023, Mr. Sheridan instituted this action against Eastern Account, Equifax Information Services, LLC, ("Equifax") and Trans Union, LLC ("Trans Union") alleging they failed to reasonably investigate disputes with his credit report and continually reported an inaccurate delinquent payment owed to Frontier Communications ("Frontier"). [ECF 1]. The action is brought pursuant to 15 U.S.C. §§ 1681 – 1681x ("Fair Credit Reporting Act"). On November 3, 2023, the Court received a Notice of Settlement with Defendants Equifax

Information Services and Trans Union, LLC. [ECF 31]. The single remaining claim is against Eastern Account for violation of 15 U.S.C. § 1681s-2(b).

In 2020, Mr. Sheridan learned his credit report contained collection entries regarding a debt to Frontier Communications that he had successfully litigated in arbitration. [ECF 1 at ¶¶ 6–9]. Mr. Sheridan contacted Frontier's legal counsel but received no response. [*Id.* at ¶ 11]. Subsequently, he sent several disputes to the Defendant credit bureaus. [*Id.* at ¶ 13]. Pursuant to the FCRA, the credit bureaus relayed the dispute to Eastern Account via the automated system known as "e-Oscar". [*Id.* at ¶¶ 18, 41]. Upon receipt of the disputes, Eastern Account failed to fully and properly investigate Mr. Sheridan's disputes. [*Id.* at ¶ 41]. Eastern Account failed to review all relevant information provided by the consumer reporting agencies. [*Id.* at ¶ 42]. No reasonable investigation was conducted by Eastern Account. [*Id.* at ¶ 45]. As a result, Mr. Sheridan was forced to pay an excessive interest rate on a recent car purchase. [*Id.* at ¶ 20]. Mr. Sheridan also suffered loss of credit, loss of ability to purchase and benefit from credit, increased insurance rates, mental and emotional pain, anguish, humiliation, and embarrassment of credit denials. [*Id.* at ¶ 48]. As part of his prayer for relief, Mr. Sheridan requests all creditors who denied Mr. Sheridan a loan be advised the subject debt was invalid. [*Id.* at ¶ 49]. Additionally, Mr. Sheridan asserts he is entitled to recover costs and attorney fees pursuant to 15 U.S.C. §§ 1681n and 1681o. [*Id.* at ¶ 50].

On July 17, 2023, Mr. Sheridan filed a Motion for Default Judgment against Eastern Account [ECF 16]. On July 19, 2023, the Clerk entered entry of default as to Eastern Account. [ECF 17]. On September 19, 2023, the Court directed Mr. Sheridan to ensure proper service upon Eastern Account. [ECF 22]. Mr. Sheridan arranged for personal service upon Eastern Account on September 25, 2023. [ECF 24]. On January 5, 2024, the Court held an evidentiary hearing. Mr.

Sheridan and his counsel appeared. No representative appeared on behalf of Eastern Account. [ECF 36].

Mr. Sheridan testified the prime interest rate in effect in October 2022 was 7% based upon his internet search and the same auto loan financed at 7% would have yielded only a $6,734 finance charge and $577 monthly payments. [ECF 43 at 23]. Mr. Sheridan testified he is paying an additional $17,959.48 over the life of the loan due to the incorrect entry on his credit report. [*Id.*]. Due to the increased monthly payments, Mr. Sheridan testified he was forced to forego travel during his retirement to visit his grandchildren, forego obtaining loans to expand his barbecue business, and was denied the ability to obtain solar panels for his home. [*Id.* at 24–25; ECF 38 at 3]. Mr. Sheridan presented evidence that Santander, a consumer finance provider, denied his auto loan application, although a different lender ultimately extended credit at a high interest rate and denied funds for his desired solar panels. [*Id.*]. Mr. Sheridan also asserted that Eastern Account engages in "passive debt collection," also known as "credit parking," and that he is not the only individual to obtain a default against Eastern Account. Mr. Sheridan presented evidence that in the past seven years, 50% of all federal proceedings to which Eastern Account has been a party have resulted in default. [ECF 38-1].

At the conclusion of the hearing, the Court instructed Mr. Sheridan to serve his Post Hearing Briefing [ECF 38] on Steven Richard Zank, the Vice President of Eastern Account. Mr. Zank was personally served on January 29, 2024. [ECF 41].

## II.

When a party moves for a default judgment, Rule 55(b) authorizes a district court to "conduct hearings or make referrals" in order to, *inter alia*, "determine the amount of damages[,]"

establish the truth of any allegation by evidence[,] or investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B)–(D). "[A] default judgment may not be entered without a full hearing unless the damages are liquidated or otherwise uncontested." *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020). "Courts will not simply accept the plaintiff's statement of damages, but instead must ensure that damages are appropriate." *Finney v. MIG Cap. Mgmt., Inc.*, No. CIV.A. 2:13-02778, 2014 WL 1276159, at *10 (S.D.W. Va. Mar. 27, 2014) (Copenhaver, J.); *see also Cox v. Lightning Cont. Servs., Inc.,* No. 5:19-CV-00178, 2022 WL 289748, at *2 (S.D.W. Va. Jan. 31, 2022) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

### A.    *Compensatory Damages*

Title 15 U.S.C. § 1681s-2(b)(1)(A)–(B) provides as follows respecting certain duties imposed by the FCRA:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> A. conduct an investigation with respect to the disputed information;
>
> B. review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title.

Our Court of Appeals has held "§ 1681s-2(b)(1) requires creditors after receiving notice of a consumer dispute from a credit reporting agency, to conduct a *reasonable* investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added). "Whether an investigation was reasonable 'is based on an evaluation of information within the furnisher's possession, such

4

as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account.'" *Manos v. Freedom Mortg. Corp.*, 2022 WL 874181, at *1 (4th Cir. Mar. 24, 2022) (citing *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017)).

Under 15 U.S.C. § 1681n, a prevailing consumer is entitled to "any actual damages sustained by" him or her. Damages for emotional distress and loss of reputation are recoverable under the FCRA. *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). However, to recover damages for emotional distress a plaintiff must "reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007); *see also Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 241 (4th Cir. 2009).

It is clear Eastern Account did not conduct a reasonable investigation into Mr. Sheridan's claims when it ignored the disputes sent by the Defendant credit bureaus. Had Eastern Account properly investigated the disputes, Mr. Sheridan would not have suffered $17,959.48 in excess finance charges based on his calculations. [ECF 38 at 3]. Accordingly, Mr. Sheridan is entitled to $17,959.48 in excess finance charges.

Additionally, Mr. Sheridan seeks compensatory damages based upon mental and emotional distress, impairment of reputation, and personal humiliation. The complaint alleges Mr. Sheridan "suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.' [ECF 1 at 9]. Mr. Sheridan testified Eastern Account's misconduct has resulted in a loss to him of $200 per month, lessening his ability to use that money on utility, medication, travel, and business expenses. [ECF at 24-25]. As noted, Santander denied him an auto loan and he had to forego solar

panels for his home based on his inaccurate credit report. [ECF 38 at 3]. An additional award of $7,040.52 is appropriate. The Court thus **FINDS** by a preponderance of the evidence that Mr. Sheridan is entitled to $25,000 in total compensatory damages.

B.   *Punitive Damages*

"Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow." 15 U.S.C.A. § 1681n(a)(1)(B)(2).

"The term 'willfulness,' within the meaning of the FCRA, includes acting with 'reckless disregard' of one's obligations under the statute." *Daugherty*, 701 F. App'x at 253 (4th Cir. 2017) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). Willful violations can be proven by showing not only knowing, intentional violations, but also violations in reckless disregard of the law. *Safeco Ins. Co.*, 551 U.S. at 57, 71 (finding "[t]he Court of Appeals correctly held that reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."). "A showing of malice or evil motive is not required to prove willfulness under the Act." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). "A defendant may demonstrate reckless disregard of its statutory obligations by repeatedly ignoring warning signs that it is violating the law and by failing to take corrective action to prevent future violations." *Daugherty*, 701 F. App'x at 253 (4th Cir. 2017); *see also Phillips v. Trans Union, LLC,* 2017 WL 3911018, at *7 (W.D. Va. Sept. 6, 2017).

When determining whether punitive damages are appropriate, our Court of Appeals has required consideration of the following: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the

punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 152 (4th Cir. 2008) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). The degree of reprehensibility is determined based on whether:

> [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419. "FCRA violations result in economic and emotional harm, but such violations will very infrequently cause physical harm or endanger the health and safety of others. . . . Yet Congress has nonetheless authorized punitive damages in FCRA cases." *Saunders*, 526 F.3d at 152–53.

Punitive damages are plainly appropriate here. Respecting the first factor, Mr. Sheridan proved Eastern Account failed to reasonably investigate his dispute and instead continued its practice of "passive debt collection," with reckless disregard of his consumer rights. Mr. Sheridan filed multiple disputes with the Defendant credit bureaus that were then sent to Eastern Account via the e-Oscar system. [ECF 1 at 43–44]. Ultimately, Eastern Account failed to conduct a reasonable investigation. As a result, Mr. Sheridan suffered economic harm. Additionally, Mr. Sheridan has demonstrated that Eastern Account has a pattern of ignoring lawsuits filed against it resulting in default. [ECF 38-1].

To properly punish and deter Eastern Account from continuing its "passive debt collection" business practice, an award of two times the compensatory damages, for a total of $50,000.00, is appropriate under the second factor. Respecting the third factor, our Court of

7

Appeals has upheld large differences in compensatory damages and punitive damages. *See Saunders*, 526 F.3d at 154 (upholding $80,000 punitive damages award in case involving $1,000 statutory damages); *Daugherty*, 701 F. App'x at 260 (4th Cir. 2017) (remitting $2.5 million punitive damages award to $600,000, when compensatory damages were $6,128).

C.   *Attorney Fees*

"Any person who willfully fails to comply with any requirement imposed under . . . . [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(3). Inasmuch as Mr. Sheridan is a prevailing party, the Court determines in its discretion that he is entitled to an award of his reasonable attorney fees in the amount of $1,712.00.

### III.

Based upon the foregoing findings of fact and conclusions of law, it is **ORDERED** as follows:

1. That Mr. Sheridan be, and he hereby is, awarded against the Defendant Eastern Account the sum of $25,000 in compensatory damages, $50,000 in punitive damages, and $1,712 in attorney fees; and

2. That this action be, and it hereby is, **DISMISSED** and **STRICKEN** from the docket.

The Court **DIRECTS** the Clerk to transmit a copy of this Order to counsel of record and any unrepresented party.

ENTER:   July 26, 2024

Frank W. Volk
United States District Judge